In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-19-00375-CV

**ACE REAL PROPERTY INVESTMENTS, LP AND FORMOSA PROPERTY MANAGEMENT COMPANY, INC., Appellants**

**V.**

**CEDAR KNOB INVESTMENTS, LLC, ET AL, Appellees**

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 16-12-14842-CV**

**MEMORANDUM OPINION**

The Court's opinion and judgment of October 28, 2021 are withdrawn and the following are substituted in their place. The motion for rehearing is denied.

Ace Real Property Investments, LP (Ace) sued Cedar Knob Investments, LLC (Cedar Knob) and its President, Carmen Williams (Williams) for breach of contract, common law fraud, fraud by non-disclosure, statutory fraud, negligence, negligent misrepresentation, gross negligence and malice, and violations of the Texas Real

Estate Licensing Act arising out of a commercial real estate transaction in Montgomery County, Texas.[1,2] Ace sought to hold Cedar Knob liable for Williams's acts through respondeat superior and further sought to pierce the corporate veil and hold Williams personally liable. Cedar Knob counterclaimed against Ace and filed a third-party petition against Ace's general partner, Formosa Property Management Company, Inc. (Formosa), for attorney's fees. Cedar Knob also filed third-party claims against Home Run Realty—Commercial & Residential, Inc. (Home Run), Ace's real estate broker.

The trial court granted Cedar Knob and Williams's traditional and no-evidence motions for summary judgment on all Ace's claims and subsequently signed a final judgment disposing of all parties and claims. The final judgment provided Ace take nothing on all claims against Cedar Knob and Williams, and it awarded $249,513.90 in attorney's fees to Cedar Knob and Williams, post-judgment

---

[1] Ace also sued Cedar Knob's broker, Marcus & Millichap ("M&M") but non-suited that entity before judgment.

[2] Additionally, Ace named Linda Chaison as a defendant but never served her, and she never appeared. Although neither party contends that the judgment is not final or appealable, we review *sua sponte* jurisdictional issues. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004). "A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record[.]" *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex. 2001). Here, the Final Judgment "disposes of all claims and all parties before the Court." Likewise, Ace acknowledges it never served Chaison, and she never appeared in its brief. Our review indicates this is a final, appealable judgment as nothing in the record indicates Ace intended to serve Chaison, and she never appeared or filed any pleadings. *See M.O. Dental Lab*, 139 S.W.3d at 674.

interest, and costs. The final judgment provided that these awards could be recovered jointly and severally from Ace and its general partner, Formosa. Ace and Formosa appeal the trial court's judgment in favor of Cedar Knob and Williams, the trial court's order denying Plaintiff's request for an extension of deadlines, and the trial court's order granting Defendants' motion to strike Ace's economic expert. Ace and Formosa raise multiple issues, which can be grouped as challenges to: (1) the granting of the no-evidence summary judgment motion; (2) the granting of the traditional summary judgment motion; and (3) the granting of the motion to strike Ace's economic expert and refusal to extend deadlines. We will affirm in part and reverse in part.

## I. Background

### A. The Parties and Property

In 2010, Cedar Knob acquired a commercial property, formerly an auto dealership, from Buckalew Chevrolet. Cedar Knob renovated the property, turning it into multiple office spaces, and leased it to various tenants. In May 2015, Ace purchased the property, now known as Wilson Road Plaza, from Cedar Knob.

The purchase of the property began in late 2014, when Cedar Knob's broker, M&M prepared an Offering Memorandum for the property, which listed the property's CAP rate as 9.88% and provided a current rent roll and expense information. The Offering Memorandum also included a "Lease Expiration

3

Summary" showing that more than 84% of the existing tenants' leases would expire by December of 2016. After seeing the property listed online, Shelley Chen, a real estate investor and Ace's managing partner, had her agent, Nolan Nix of Home Run, contact M&M to obtain more information on the property. As Ace's primary decision-maker and a former C.P.A., Chen is an experienced real estate investor. Chen's agent, Nix, described her as a "very experienced" buyer and cited her extensive history of purchasing and selling properties. On February 23, 2015, upon Ace's request for information on the property, M&M forwarded the Offering Memorandum, and the parties executed a letter of intent.

**B. The Contract**

On February 27, 2015, Ace executed a contract to purchase the property for $4,500,000, using the standard Texas Association of Realtors (TAR) Commercial Property Contract Form. That contract required the seller, Cedar Knob, to provide the following information:

> (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;
> (b) copies of all current leases pertaining to the Property, including any modifications, supplements, or amendments to the leases;
> (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;
> (d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;
> (e) copies of all current service, maintenance, and management agreements relating to the ownership and operation of the Property;
> (f) copies of current utility capacity letters from the Property's water and sewer service provider;

4

(g) copies of all warranties and guaranties relating to all or part of the Property;

(h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;

(i) copies of all leasing or commission agreements that currently relate to the tenants of all or part of the Property;

(j) a copy of the "as-built" plans and specifications and plat of the Property;

(k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;

(l) a copy of Seller's income and expense statement for the Property from 1/1/12 to current;

(m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;

(n) real & personal property tax statements for the Property for the previous 2 calendar years; and

(o) Tenant reconciliation statements including, operating expenses, insurance and taxes for the Property from 1/1/12 to current; and

(p) Tax Form 8825 from 1/1/12 to 12/31/14.[3]

The contract further required Cedar Knob to provide estoppel certificates from each tenant leasing space in the property. The contract gave Ace the "unrestricted right to terminate" the contract during the 30-day feasibility period, and Ace agreed to accept the property "in its present condition[.]"

## C. Cedar Knob's Disclosures and Ace's Inspection

Beginning on March 2, 2015, Cedar Knob provided documentation through M&M regarding the property. The information included lease agreements for all the tenants and a summary of the tenants with lease amounts, lease commencement

---

[3] Tax form 8825 was not part of the pre-printed form, rather the parties handwrote it into the contract and initialed it.

dates, and lease expiration dates. The leases showed almost no tenants provided security deposits, which Nix acknowledged could be a sign of weaker tenants. Further, each lease contained a provision indicating that the lease was binding and inured to the benefit of the parties and "their respective . . . successors[] and permitted assigns." The leases also contained the following provision:

> F. <u>Waiver</u>: Landlord's delay, waiver, or non-enforcement of acceleration, contractual or statutory lien, rental due date, or any other right will not be deemed a waiver of any other or subsequent breach by Tenant or any other term in this lease.

Cedar Knob sent Tax Form 8825 with additional explanations for the 2012 and 2013 income years indicating Cedar Knob had not always collected the full rental amounts specified in the leases, including "[m]ost of the tenants had free rent for several months in the beginning[]" because Cedar Knob was "still in the renovation stages on some parts of the center." Both 8825s reflected losses. M&M forwarded a 2014 profit and loss statement, noting that it "is the rough 2014 P&L[]" and to "[k]eep in mind this is not approved by his CPA." Cedar Knob also provided TAR form estoppel certificates with the lease amounts and additional written notations where rent reductions had been given. Cedar Knob continued answering questions Ace sent through the agents, provided lease addendums for one of the larger tenants, and revised information about the common area maintenance charges (CAM) under the lease agreements between Cedar Knob and its tenants.

6

As late as April 27, 2015, M&M sent inquiries from Ace to Cedar Knob regarding rent roll discrepancies with the estoppel certificates. Cedar Knob sent a spreadsheet showing the monthly rent amount with the estoppel certificates and referenced the notes on the estoppels, which M&M sent to Ace's agent. Cedar Knob also explained, "New owner can charge what is on the lease agreements." Finally, Williams provided an affidavit regarding any documentation and information they did not have required to be produced under the terms of the contract, and Nix testified Cedar Knob sent all requested information "per the contract[.]"

Chen and Nix visited the property and spoke with tenants. Nix testified they were never denied access to the property. In March of 2015, Ace inspected the property and subsequently negotiated a $77,648 price reduction for necessary roof repairs. Nix sent an email to M&M complaining that it appeared the CAM amounts should be more, the seller was collecting less, and expressed concern about the buyer's ability to collect "the actual CAMs." Chen testified that after inspecting the property, they adjusted the price for a roof issue, and proceeded with closing.

On May 4, 2015, the parties extended the closing date again when Cedar Knob forwarded additional information which included its profit and loss statement for January 2015 through April 2015 and revised CAM spreadsheet through April 2015. Prior to closing, Chen requested all the tenant files for the property, which Cedar Knob forwarded. Before closing, Cedar Knob also sent a spreadsheet of the May

7

rent collected for each tenant and included copies of checks showing the amounts paid, which showed several tenants paying less than the specified lease rental amounts but consistent with the notes in the estoppel certificates and other written communications between the parties.

The summary judgment evidence also included Ace's agent's testimony agreeing that Cedar Knob provided estoppel certificates which made clear some tenants paid lower rent than the leases required. Nix testified this "was a concern, and it - - it was on the cover letter of the estoppel." He said that "[t]here was no amendment to the lease . . . they were disclosed . . . the breaks or discounts they were given[]" and Shelly "was aware of everything that was going on[.]" Nix managed the property following the sale and testified that all but one space was leased and, with one exception, the new tenants were paying higher rent than the previous tenants.

**D. Appraisal**

Several weeks before closing, Ace's lender commissioned a third-party appraisal, which valued the property at $4,520,000. The appraisers utilized two different approaches to value the property, the income capitalization approach, and the sales comparison approach. The former considered cash flow, comparable rental rates from other properties, and historical operating information from the property, while the latter considered comparable improved sales and compared them to the

subject property. The appraisers then "[r]econciled the results from the applicable approaches to value into a reasonable value conclusion."

**E. Other Evidence Regarding Post-Purchase Rental Amounts**

After closing, several tenants moved out and/or did not want to pay the rental amount in the leases; however, Chen represented that Ace could not enforce the leases since Cedar Knob had been collecting lesser amounts. Further, she explained Ace could not enforce the leases, "[b]ecause people will move out."

**F. Litigation and Discovery Issues**

On December 23, 2016, Ace filed the underlying litigation. In its live pleading, Ace alleged that Cedar Knob "intentionally and/or negligently provided Plaintiff with false and/or misleading information" that Cedar Knob knew was false when provided, preventing it from making an informed decision. Ace alleged it relied on the information when calculating the purchase price of the property, and had Ace known the information was false or misleading, it would not have purchased the property or paid "substantially less than $4,500,000." Ace alleged causes of action for breach of contract, common law fraud, fraud by non-disclosure, statutory fraud, negligence, negligent misrepresentation, gross negligence and malice, and violations of the Texas Real Estate Licensing Act against Cedar Knob.[4] Ace sought

---

[4] With respect to the real estate broker and agent defendants, Ace also alleged violations of the Texas Real Estate Licensing Act.

9

to hold Cedar Knob liable for Williams's acts through respondeat superior and further sought to pierce the corporate veil and hold Williams personally liable for its alleged damages. In addition to Ace's complaint that it would have paid less for the property, it also seemed to assert a claim for loss of anticipated future rents. During discovery, Ace provided spreadsheets of alleged rent losses, which it included as part of the summary judgment evidence.

On September 21, 2017, the trial court entered a Discovery Control Plan, and set the case for trial on October 1, 2018. Ace filed a motion for continuance, which the trial court granted, moving the trial setting to May 13, 2019. On July 13, 2018, the parties signed an Agreed Scheduling Order that required Ace to designate its expert witnesses by November 2, 2018, that closed the discovery period on March 1, 2019, and that set the matter for trial on May 13, 2019.

On November 2, 2018, Ace filed its Amended Designation of Experts. Ace designated Dr. Gary Kronrad, an economist, as an expert witness. The designation provided the following:

> Dr. Kronrad is expected to testify as to [the] method of calculating and the amount of Plaintiff's economic damages. Dr. Kronrad will add the dollars Plaintiff should have collected for the plaza, according to Defendants, and then subtract it from the dollars actually collected for the plaza after the purchase. This is the uncollected amount. Dr. Kronrad will then divide the uncollected amount by the capitalization rate, which will equal the amount Plaintiff overpaid for the plaza. Dr. Kronrad is expected to testify as to the damages for the difference in the square footage of the plaza, according to the Defendant, and the actual square footage of the plaza. Dr. Kronrad is expected to testify as

10

to the damages for the cost of undisclosed defects to the plaza that were discovered after the purchase of the plaza.[5]

On February 7, 2019, the parties filed an Agreed Motion for Continuance which the trial court granted, extending the discovery deadline to June 7, 2019, and setting the matter for its third trial setting of October 7, 2019. On May 24, 2019, Ace filed a motion to extend the discovery and dispositive motions deadlines.[6] Cedar Knob opposed the extension of these deadlines and argued that Ace failed to exercise diligence in obtaining depositions, and with three different law firms representing Ace, there was no reason discovery should not be completed timely. The trial court denied Ace's motion to extend the deadlines.

After M&M filed a motion to strike Ace's expert, Dr. Gary Kronrad, Cedar Knob joined the motion. The defendants explained they took Chen's deposition on November 28, 2018 and designated their experts a few weeks later. Beginning on January 2, 2019, the defendants requested deposition dates for Dr. Kronrad from Ace's attorney. Ace failed to provide dates for Dr. Kronrad's deposition prior to the close of the discovery period despite at least ten requests for dates. Following a hearing, the trial court granted the motion to strike. The court explained during the hearing that Ace had the responsibility to provide the defense with an expert report

---

[5] Ace's designation for Chen used virtually identical language regarding the calculation of damages.

[6] Five days later, Ace filed a motion to quash Gary Kronrad's deposition.

or present the expert for deposition. The trial court also noted that there were nine other depositions in the case covered by another attorney representing Ace, and another attorney likewise could have covered Kronrad's deposition if lead counsel was unavailable. The trial court also explained that extending the deadlines would be for a matter of months, not weeks, and the "case is old[,]" and would inevitably result in moving the trial again. Cedar Knob argued that Ace failed to comply with Rule 195.3, and there was no basis for an extension under Rule 252. The trial court explained that the rule requires the expert to "be produced reasonably promptly[,]" and "there has been no emergent situation that would justify the delays that have gone on between December and now with this expert."

## II. Ace's Expert and Deadline Extension

### A. Expert

Given the nature of Cedar Knob's summary judgment and assertions there is no evidence to show that it caused damages to Ace, we first address Ace's appellate complaint that the trial court improperly struck its economist and damages expert, Dr. Gary Kronrad. The motion to strike was filed pursuant to Texas Rule of Civil Procedure Rule 215, which governs discovery abuses and sanctions. *See generally* Tex. R. Civ. P. 215. Rule 215.2 permits the trial court to impose sanctions if a party abuses the discovery process. *See id.* 215.2.

We review a trial court's ruling on a motion for sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *City of San Antonio v. Segura*, No. 04-95-00348-CV, 1996 WL 525577, at *2 (Tex. App.—San Antonio 1996, no writ) (reviewing a trial court's decision on a motion to strike as a sanction for an abuse of discretion). When a party designates a person to testify and fails to comply with proper discovery requests, a trial court may enter an order prohibiting the disobedient party from introducing designated matters into evidence. *See* Tex. R. Civ. P. 215.2(b)(4); *Adams v. Allstate Cty. Mut. Ins. Co.*, 199 S.W.3d 509, 513 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Rule 215 sanctions must be just under the circumstances. *In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998). We consider two factors in determining whether the trial court abused its discretion by ordering an unjust sanction: (1) whether there is a direct relationship between the offensive conduct and the sanctions; and (2) whether the trial court ordered an excessive sanction. *See id.* at 718. A discovery abuse sanction should not be more severe than necessary to satisfy its legitimate purpose. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). A trial court must consider the availability of less stringent sanctions and "whether such sanctions would fully promote compliance." *Adams*, 199 S.W.3d at 513 (citing *Powell*, 811 S.W.2d at 917). A party's failure to promptly make an expert available for deposition is

13

sanctionable conduct under Texas Rule of Civil Procedure 215. *Vaughn v. Ford Motor Co.*, 91 S.W.3d 387, 391-92 (Tex. App.—Eastland 2002, pet. denied).

In the present case, the trial court's order striking Dr. Kronrad was directly related to Ace's failure to present him for deposition or provide the opposing parties with an expert report, despite him being noticed for deposition on three occasions and after months of repeated requests for his oral deposition by the various defendants in the litigation. The trial court noted during the hearing that the case was very old, and that by extending any discovery deadlines, invariably, the case's trial setting would have to be moved again.[7] Further, the trial court explained that Ace had multiple attorneys representing it available to cover such a deposition in the event lead counsel was unavailable. *Cf. Wilborn v. GE Marquette Med. Sys., Inc.*, 163 S.W.3d 264, 270 (Tex. App.—El Paso 2005, pet. denied) (upholding a denial of a motion for continuance because appellants were represented by "able counsel" at all times).

Ace failed to provide deposition dates until more than two months after the discovery period expired per the agreed docket control order and approximately

---

[7] At the hearing, Cedar Knob's attorney explained that Ace's attorney once again sought to extend the discovery deadline, which the various defendants would not agree to. When that happened, Ace's attorney unilaterally noticed ten depositions of various defense witnesses. Those depositions took place, and another attorney representing Ace handled those depositions.

14

eight months after Dr. Kronrad had been designated as an expert witness.[8] The trial court considered other lesser sanctions, including having Ace pay for an expedited deposition transcript; however, the trial court indicated it was not a viable option. The trial judge reasoned it would be considerable time and expense for the other party despite Ace's representation it would present the witness at a more convenient location. The trial court reasoned that the second date proposed by Ace for taking the expert's deposition was the day of the deadline for challenging any expert witness, which necessarily meant that deadline would have to be extended. The trial court explained that by granting Ace's relief of extending the discovery deadline, "there will be no other option but to move the trial deadline" and "there has been no emergent situation that would justify the delays that have gone on between December and now with this expert." The exclusion of testimony as a sanction will not be reversed unless the error probably resulted in the rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *see also Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883-84 (Tex. 2003) (explaining sanction resulted in "harmful error" and "probably caused the rendition of an improper judgment"). "[T]he exclusion or admission is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment."

---

[8] In its brief, Ace concedes that counsel's failure to promptly present Kronrad for deposition warranted some sanction.

*State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Although Kronrad was Ace's only retained expert, the damage model as listed in Ace's disclosures, was "basic math," and Ace had designated both Kronrad and Chen to testify regarding the damages calculation.[9] "[A]n owner's valuation testimony fulfills the same role that expert testimony does." *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 157 (Tex. 2012). "[W]hen an entity's agent testifies to the market value of the organization's property, the legal effect is that the actual owner of the property is testifying." *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 853 (Tex. 2011). Accordingly, Ace could have had Chen, an accountant familiar with the commercial real estate transactions generally and specifically, this one, provide testimony as to damages. *See Justiss*, 397 S.W.3d at 157; *Reid Rd.*, 337 S.W.3d at 853. Because another witness could have testified to this "basic math" damage model, we conclude that the trial court's sanction was not unjust.

Based on this record, we conclude the trial court's sanction of striking Ace's expert did not constitute an abuse of discretion. "A just sanction must be directed against the abuse and toward remedying the prejudice suffered by the innocent party." *Adams*, 199 S.W.3d at 513 (citing *Powell*, 811 S.W.2d at 917). The sanction

---

[9] The language in Ace's designation of Chen and Kronrad regarding the damages calculation was virtually identical.

16

was directly related to the party's repeated refusal to promptly present its expert for deposition within the discovery period as required by the rules or otherwise provide an expert report. The record established the trial court considered a lesser sanction and articulated its reasoning for why it believed the lesser sanction would not be viable here, because the deadline had passed and would necessarily impede the other parties' ability to effectively meet the deadline to timely challenge the expert absent moving the trial setting. We overrule this issue.

**B. Deadline Extension**

Ace contends that given the critical nature of Kronrad's testimony, the trial court should have extended the deadlines to "prevent manifest injustice." A trial "court may modify a discovery control plan at any time and must do so when the interest of justice requires." Tex. R. Civ. P. 190.5. For many of the same reasons discussed above, the trial court did not abuse its discretion in refusing to modify the discovery deadlines in this case to allow Ace to comply with the discovery rules that would have allowed Dr. Kronrad to testify. The trial court explained that Ace, without good cause, failed to present Kronrad for deposition before the close of the discovery period despite repeated requests and did not provide the opposing parties with a written expert report from Dr. Kronrad. The trial could have also reasonably concluded Kronrad's testimony would have been cumulative of Chen's. Therefore, "the interest of justice" did not require the trial court to extend the deadlines to allow

compliance with the discovery rules in this instance. Having determined the trial court did not abuse its discretion by refusing to modify the docket control order and extend the deadlines, we overrule this issue.

### III. Summary Judgment

### A. Motion and Response

Cedar Knob filed a combined no-evidence and traditional motion for summary judgment. The trial court granted the traditional and no-evidence motion in its entirety without specifying the basis for its ruling. For Ace's breach of contract, negligence, gross negligence, negligent misrepresentation, common law fraud, statutory fraud, and fraud by non-disclosure claims, Cedar Knob listed the requisite elements for each cause of action and asserted there was no evidence that its actions caused damage or injury to Ace.[10] With respect to the corporate veil piercing theory, Cedar Knob listed the required elements and asserted there was no evidence of any of them. Cedar Knob also argued there was no evidence as to each element of Ace's claim under the Texas Real Estate Licensing Act. Finally, Cedar Knob moved for traditional summary judgment on its claim for attorney's fees pursuant to the

---

[10] As to the gross negligence claim, Cedar Knob argued that because there was no evidence on the negligence claim, the gross negligence claim failed as a matter of law. Cedar Knob further argued there was no evidence that there was objectively an extreme degree of risk or that Cedar Knob had actual, subjective knowledge of the risk yet proceeded with conscious indifference to the rights, welfare, and safety of others.

contract. In support of this claim, Cedar Knob provided its attorney's affidavit and invoices.

Ace responded to the summary judgment motion. Among other things, the evidence in the summary judgment record included the appraisal report, Williams's testimony, Chen's affidavit, Chen's deposition testimony, Nix's deposition testimony, Nate Newman's deposition testimony (M&M agent), Aaron Morris's deposition testimony (M&M), leases, estoppel certificates with explanations, various emails, spreadsheets, and a consolidated Profit & Loss Statement covering 2012 to 2015 ("Omnibus P&L") with transaction details regarding past income.[11]

Ace's arguments focus on the Omnibus P&L, which it asserts Cedar Knob had while negotiating the sale of the property but failed to produce. The Omnibus P&L with transaction detail showed in one document what Cedar Knob had been collecting in rent. Ace contended that document showed Cedar Knob had been collecting less rent than the rent rolls and leases showed, and if it had known, it would not have purchased the property or would have purchased it for substantially less, and it suffered future loss rents as a result. The summary judgment record established that Cedar Knob provided documents that showed discrepancies in the rental amounts prior to the sale, and specifically, that Cedar Knob had collected less

---

[11] The parties refer to this as an "Omnibus 2013 – 2015 Profit Loss Statement."

rents from some tenants, but despite admitting it was aware of these discrepancies, Ace proceeded to close on the transaction.

**B. Standard of Review**

We review a trial court's decision to grant summary judgment de novo. *See Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (citation omitted). We view the evidence in the light most favorable to the nonmovant. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). In doing so, we indulge every reasonable inference and resolve any doubts against the motion. *See City of Keller*, 168 S.W.3d at 824. "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (citation omitted).

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim on which the adverse party has the burden of proof. Tex. R. Civ. P. 166a(i). The motion must specify which elements have no evidence. *See id.* "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.*

When a no-evidence motion has been filed, it "is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence

summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) (citations omitted). A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citation omitted).

A party moving for traditional summary judgment has the burden of establishing there is no genuine issue of material fact as to at least one requisite element of the asserted cause of action and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citations omitted). When the trial court fails to specify the grounds on which it granted summary judgment, we must affirm if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) (citation omitted). If a defendant files a combined traditional and no-evidence summary judgment motion, we first review the judgment under the no-evidence standards of Rule 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600–01 (Tex. 2004); *Werth v. Johnson*, 294 S.W.3d 908, 909 (Tex. App.—Beaumont 2009, no pet.). Accordingly, we limit our

discussion of the summary judgment grounds to those necessary for the resolution of this appeal. *See FM Props.*, 22 S.W.3d 872-73; Tex. R. App. P. 47.1.

**C. Breach of Contract, Common Law Fraud, Statutory Fraud, Fraud by Nondisclosure, Negligent Misrepresentation, Negligence and Gross Negligence Claims: No Evidence Cedar Knob Caused Ace Injury or Damage**

To prove a claim for breach of contract, a party must establish: (1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) "the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). The requisite elements of a negligence cause of action are legal duty, a breach of that duty, and damages proximately caused by the breach. *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) (citation omitted). For a breach of contract claim for the sale or purchase of real estate, the measure of damages is the difference between the contract price and the property's market value at the time of the breach. *Juen v. Rodriguez*, 615 S.W.3d 362, 366 (Tex. App.—El Paso 2020, no pet.).

Gross negligence has two additional requirements: (1) viewed objectively from the actor's standpoint, the complained-of act or omission involves an extreme degree of risk, considering the probability and magnitude of potential harm to others; and (2) the actor has actual, subjective awareness of the risk involved, but proceeds regardless in conscious indifference to the rights, safety, or welfare of others. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001).

22

Common-law fraud requires a plaintiff to prove "'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998)). Texas recognizes two measures of damages for fraud, which include the out-of-pocket measure and the benefit-of-the-bargain measure. *Id.* (citation omitted).

Ace also pleaded a cause of action for statutory fraud.

> The elements of statutory fraud in a real estate transaction are a: "(1) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract; or (2) false promise to do an act, when the false promise is (A) material; (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter into a contract; and (D) relied on by that person in entering into that contract."

*Grove v. Franke*, No. 09-18-00119-CV, 2019 WL 5243152, at *3 (Tex. App.—Beaumont Oct. 17, 2019, pet. denied) (mem. op.) (quoting *Flynn v. Keller Williams Inc.*, No. 04-12-00307-CV, 2013 WL 979196, at *2 (Tex. App.—San Antonio Mar. 13, 2013, no pet.) (mem. op.); *see also* Tex. Bus. & Com. Code Ann. § 27.01(a). A person who makes the false representation described by the statute commits fraud

and is liable to the person defrauded for actual damages. *See* Tex. Bus. & Com. Code Ann. § 27.01(b).

"The elements of fraud by nondisclosure require (1) a deliberate failure to disclose material facts, (2) by one who had a duty to disclose such facts, (3) to another who was ignorant of the facts and did not have an equal opportunity to discover them, (4) with the intent the listener act or refrain from acting, and (5) the listener relies on the nondisclosure resulting in injury." *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, no pet.) (citations omitted).

To establish a claim for negligent misrepresentation, a plaintiff must prove "(1) the representation is made by a defendant in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.*, 137 S.W.3d 311, 321 (Tex. App.—Beaumont 2004, no pet.) (citing *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

Cedar Knob moved for traditional and no-evidence motion for summary judgment on each of the foregoing causes of action asserted by Ace. *See* Tex. R. Civ. P. 166a(c), (i). Because there is no evidence Cedar Knob's alleged

24

misrepresentations or nondisclosure caused Ace damages, we will affirm the trial court's summary judgment as to the breach of contract, negligence, gross negligence, common-law fraud, statutory fraud, fraud by non-disclosure, and negligent misrepresentation claims. To defeat summary judgment on each of its alleged claims, Ace was required to submit summary judgment proof that it suffered damages caused by Cedar Knob's conduct. *See Zorrilla*, 469 S.W.3d at 153 (common-law fraud); *Menchaca*, 545 S.W.3d at 501 n.21 (breach of contract); *Van Duren v. Chife*, 569 S.W.3d 176, 191 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Damages are a necessary element of claims for negligence [and] negligent misrepresentation[.]"); *BP American Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 506 (Tex. App.—San Antonio 2013, pet. denied) ("Like common-law fraud, fraud by non-disclosure includes the elements of justifiable reliance and damage."); *Reardon v. LightPath Techs., Inc.*, 183 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2005, pet. denied.) (statutory fraud has essential element of damages). Ace provided no proper summary judgment evidence that it suffered any damages caused by Cedar Knob's alleged misrepresentations or other alleged actions.

The only evidence in the record regarding the property's value was a real estate appraisal commissioned by Ace's lender that valued the property at $4,520,000, which was higher than what Ace purchased it for. While a property owner may testify to her property's value, that testimony must be based on its market

25

value and cannot be speculative or conclusory. *See Justiss*, 397 S.W.3d at 159–61; *Van Duren*, 569 S.W.3d at 191. Here, the evidence does not show that the individual who appraised the real estate was the owner of the property Cedar Knob sold. An opinion of market value without the factual basis of such is no more than a scintilla of evidence. *See Van Duren*, 569 S.W.3d at 191–92 (explaining that market value opinion that did not include information that did not provide information about comparable sales and proximity to the property, timeframe of other sales and actual sale price, or other evidence supporting the affidavit such as appraisals or tax values was "no evidence of the market value"). Here, Ace wholly failed to provide proper summary judgment evidence of the property's market value at the time of the purchase to support its claims that the value was less than it paid.

Ace challenges the appraisal contending that it relied on the same incorrect information Cedar Knob produced to Ace.[12] Even if we assume this to be true, Ace did not provide any controverting evidence of the property's market value. Neither Chen's affidavit nor her deposition testimony provides evidence regarding the property's market value at the time of purchase or explains how the purportedly false information impacted the property's value. Chen generally averred that Ace would

---

[12] The appraisal report shows that the appraisers utilized two different appraisal methods, and one of them did not consider the rental income of the property in that analysis.

26

not have purchased the property or "would have paid a substantially lower price [for] the Wilson Road Plaza."

> [P]roperty valuations may not be based solely on a property owner's *ipse dixit*. An owner may not simply echo the phrase "market value" and state a number to substantiate his diminished value claim; he must provide the factual basis on which his opinion rests. This burden is not onerous, particularly in light of the resources available today. Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support the claim. But the valuation must be substantiated; a naked assertion of "market value" is not enough. Of course, the owner's testimony may be challenged on cross-examination or refuted with independent evidence. But even if unchallenged, the testimony must support a verdict, and conclusory or speculative statements do not.

*Justiss*, 397 S.W.3d at 159. With a no-evidence motion for summary judgment, simply undermining the movant's evidence does not meet the non-movant's burden to come forward with more than a scintilla of evidence on the challenged element. *See Ridgway*, 135 S.W.3d at 600 (explaining nonmovant "must produce summary judgment evidence raising a genuine issue of material fact to defeat" a no evidence motion).

Ace also seems to seek damages for lost rents, as Chen testified that had she collected all the rents pursuant to the leases, Ace would have suffered no damages. We note an actionable false misrepresentation cannot be the promise of future rents or income, as they are generally statements of opinion rather than fact. *See Kaheel Props., LLC v. Azteca Entm't Enters., Inc.*, No. 11-16-00137-CV, 2018 WL 2976357, at *6 (Tex. App.—Eastland June 14, 2018, no pet.) (mem. op.); *Tukua*

27

*Invs., LLC v. Spenst*, 413 S.W.3d 786, 800 (Tex. App.—El Paso 2013, pet. denied). The exceptions to this are if the opinion is known to be false by the speaker, and the speaker has special knowledge of past or present facts that the other party does not. *Tukua Invs.*, 413 S.W.3d at 800. These do not apply here, as Cedar Knob disclosed by the estoppel certificates and accompanying notations that for some tenants, it did not collect the full rental amounts in the leases. The evidence in the record shows that Ace had knowledge that some tenants were paying less than the leased rental amounts.

Furthermore, as in *Tukua*, the leases at issue remained valid and enforceable. Ace failed to present any evidence otherwise. Instead, it made a calculated decision to not enforce the tenants' leases for fear it would cause others to move out and now turns to Cedar Knob to collect that money. Accordingly, there is no evidence that any false misrepresentation caused Ace's damages in the form of loss future rental income. Chen asserted in her affidavit that Cedar Knob overstated the amount of collected annual income for the property by $283,904.02 and testified in her deposition that she was unable to collect over $189,000 in rental income. Yet, neither Chen's affidavit nor any of the deposition testimony established how this alleged misrepresentation caused Ace's loss of future rental income as opposed to Ace's decision not to enforce the leases. Chen's affidavit does not address the spreadsheets Ace produced purporting to show lost rental income. Despite detailed explanations

28

about the testimony Chen would offer regarding the calculation of damages in its Responses to Request for Disclosure, neither Chen nor anyone else offered such testimony regarding this damage calculation either by affidavit, deposition or otherwise in proper response to the motion for summary judgment.

Having determined there was no evidence that Cedar Knob's alleged misrepresentations or nondisclosure caused Ace damages, the trial court properly granted Cedar Knob's no-evidence summary judgment on these claims. See Tex. R. Civ. P. 166a(i). We overrule these issues.

## D. Texas Real Estate Licensing Act Claim

Cedar Knob also moved for no-evidence summary judgment on Ace's Texas Real Estate Licensing Act claim. In a real estate transaction, a party is not liable for a license holder's misrepresentation or concealment of a material fact unless the party: "(1) knew of the falsity of the misrepresentation or concealment; and (2) failed to disclose the party's knowledge of the falsity of the misrepresentation or concealment." Tex. Occ. Code Ann. § 1101.805(d). Cedar Knob argued that there was no evidence M&M misrepresented or concealed material facts during the property's sale, that Cedar Knob knew of such a misrepresentation, or that Cedar Knob failed to disclose their knowledge of the falsity. We agree that the record is devoid of evidence establishing that M&M misrepresented or concealed material facts in the sale of the property. Having challenged the lack of evidence as to this

element, Ace was required to come forward with more than a scintilla of evidence of summary judgment evidence establishing that M&M misrepresented or concealed material facts or that Cedar Knob had knowledge of such a misrepresentation. *See* Tex. R. Civ. P. 166a(i). Ace failed to do so. Instead, the summary judgment evidence established the opposite of this vital fact. The record showed that M&M actively conveyed information from Cedar Knob regarding rent collections. In addition to the rent rolls that showed the rental amounts specified in the leases, M&M sent estoppel certificates and Cedar Knob's notes explaining that they collected lesser rents from some tenants. Ace failed to come forward with evidence creating a genuine issue of material fact showing a misrepresentation or concealment by M&M, which Cedar Knob knew of and failed to disclose. *See* Tex. Occ. Code Ann. § 1101.805(d); Tex. R. Civ. P. 166a(i). Accordingly, the trial court properly granted Cedar Knob's no-evidence summary judgment on this cause of action. See Tex. R. Civ. P. 166a(i).

**E. Corporate Veil-Piercing Theory**

Cedar Knob also moved for no-evidence summary judgment on Ace's corporate veil-piercing theory wherein it sought to hold Williams individually liable. Ace argued the court should pierce the corporate veil, because: (1) Williams caused Cedar Knob to be used for the purpose of perpetrating or did perpetrate an actual fraud on Ace primarily for her direct personal benefit; (2) organized and operated Cedar Knob as a mere tool or business conduit of another; (3) used Cedar Knob to

circumvent a statute; (4) and/or used Cedar Knob to protect against the discovery of a crime or to justify a wrong; and/or (5) Cedar Knob was undercapitalized. In its no-evidence motion for summary judgment, Cedar Knob argued there was no evidence of any of these allegations.

Cedar Knob is a limited liability company, and Williams acted as its president. Members are generally not personally liable for the debts of a limited liability company. *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex. App.— Houston [1st Dist.] 2007, pet. denied). As a limited liability company, state law principles for piercing the corporate veil apply. *See id.* Therefore, Ace could only hold Williams liable for its claims to the extent it pierced the corporate veil. *See Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). Considering the no-evidence motion challenging each of Ace's pleaded corporate veil-piercing theory allegations, the burden shifted to Ace to produce more than a scintilla of probative evidence creating a genuine issue of material fact on each of these allegations, which it failed to do. *See* Tex. R. Civ. P. 166a(i). The trial court properly granted Cedar Knob's no-evidence motion for summary judgment on the corporate veil-piercing theory. *See id.*

## F. Attorney's Fees

Cedar Knob also moved for summary judgment on its contractual attorney's fees claims in the amount of $249,513.90. The TAR contract between Cedar Knob and Ace contained the following provision:

> 17. ATTORNEY'S FEES: If Buyer, Seller, any broker, or the title company is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.

In support of its claim, Cedar Knob included its counsel's affidavit and attached invoices as summary judgment evidence. In the affidavit, counsel averred the fees were reasonable and necessary. Having provided this summary judgment evidence conclusively establishing its entitlement to fees, the burden shifted to Ace to produce evidence creating a genuine issue of material fact regarding the attorney's fees. *See* Tex. R. Civ. P. 166a(c).

On appeal, Ace argues that Cedar Knob failed to segregate its fees. In its summary judgment response, Ace simply argued that the issue of attorney's fees was not ripe, because the trial court had not yet ruled on the summary judgment motion and objected to the evidence as premature. Ace's summary judgment response did not challenge Cedar Knob's failure to segregate fees. Failure to segregate attorney's fees in a case with multiple causes of action, only some of which allow for recovery of attorney's fees, can result in an award of zero attorney's fees. *See Green Int'l, Inc.*

32

*v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). However, if nobody objects that the fees are not segregated, the objection is waived. *See id.*; *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 516 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Assuming without deciding that some of these causes of action did not allow for the recovery of attorney's fees, Ace waived any challenge to Cedar Knob's failure to segregate. *See Solis*, 951 S.W.2d at 389; *Haden*, 332 S.W.3d at 516.

Cedar Knob conclusively established its entitlement to attorney's fees. *See* Tex. R. Civ. P. 166a(c). Once the movant establishes no genuine issue of material fact exists, and its entitlement to judgment as a matter of law, the burden shifts to the nonmovant to raise a fact issue precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). Ace failed to present any evidence, in the form of controverting affidavit or otherwise, challenging the reasonableness, necessity or amount of Cedar Knob's attorney's fees that would create a genuine issue of material fact. *See id.* Failing this, the trial court properly granted summary judgment that Ace should pay Cedar Knob's attorney's fees. *See id.*

Although Cedar Knob filed a third-party claim against Formosa asserting that it should be liable for its attorney's fees as Ace's general partner, the summary judgment motion did not request an award of attorney's fees against Formosa pursuant to the allegations expressed in Cedar Knob's Third-Party Petition against Formosa, nor did the summary judgment order grant attorney's fees against

Formosa. The final judgment, however, indicates that Formosa and Ace would be jointly and severally liable for Cedar Knob's attorney's fees. Because Cedar Knob failed to request an award of attorney's fees against Formosa in its summary judgment motion, the trial court improperly granted more relief than requested. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997) (explaining that summary judgment must stand or fall on grounds stated in the motion and holding that where movant did not raise ground in motion, it was not entitled to summary judgment on that claim); *see also* Tex. R. Civ. P. 166a(c).

We sustain this issue in part as to the award of the attorney's fees against Formosa. We overrule this issue with respect to the award of attorney's fees against Ace.

## IV. Conclusion

We conclude the trial court properly granted Cedar Knob's no-evidence summary judgment on all Ace's causes of action. We also conclude that the trial court properly granted Cedar Knob's traditional summary judgment on attorney's fees as to Ace, but improperly held Formosa jointly and severally liable for such attorney's fees and costs. Accordingly, we reverse the portion of the judgment awarding attorney's fees and costs to Cedar Knob against Formosa and remand the case to the trial court to consider Formosa's liability for attorney's fees or costs as the general partner of Ace, if any. We affirm the remainder of the trial court's

34

judgment in favor of Cedar Knob and Williams. Judgment is rendered against the sureties on the appellants' supersedeas bond for the performance of the judgment and for costs rendered against the appellants. Tex. R. App. P. 43.5.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on April 13, 2021
Opinion Delivered January 13, 2022

Before Golemon, C.J., Kreger and Horton, JJ.